The Honorable Benjamin H. Settle

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| SHAMARICA D. SCOTT and LINDA A. WILSON, | NO. 3:17-cv-05823-BHS |
| Plaintiffs, | DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| THE EVERGREEN STATE COLLEGE; JENNIFER SCHOOLER; and DOES I through X, | **NOTED FOR MOTION:** **December 21, 2018** |
| Defendants. | |

## I.     RELIEF REQUESTED

Nearly a year after being dismissed as a redshirt player on the Evergreen State College's Women's Basketball team in 2015 for displaying inconsistent effort, attitude, and coachability, and failing to take the steps necessary to establish her eligibility to play, Plaintiff Shamarica Scott complained to Evergreen's Affirmative Action and Equal Opportunity Officer that she was treated harshly by the Women's Head Basketball Coach because of her race and sexual orientation, in violation of Evergreen's anti-discrimination policy. Ms. Scott, who is African American and gay, claimed that Defendant Jennifer Schooler, the former Women's Head Basketball Coach, discriminated against her, *even though Ms. Schooler is also a racial minority (Filipino) and gay*,

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
-- NO.  3:17-cv-05823-BHS

1

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

*and even though Schooler recruited Scott to play for her and accepted her request to join the team, knowing that Scott was African American and gay.*

Evergreen took Ms. Scott and her fellow plaintiff Linda Wilson's complaints seriously, investigated them, and upon finding that three of the concerns violated school policy, Evergreen addressed those concerns through corrective action and there were no further incidents. Ms. Schooler later voluntarily resigned from Evergreen.

Because Evergreen acted reasonably to investigate and address the allegations of discrimination, Plaintiffs cannot establish that Defendants were deliberately indifferent to an actionable discriminatory educational environment based on race or sexual orientation, nor are their discrimination claims against Ms. Schooler as an individual actionable under Title VI or Title IX. Plaintiffs are also unable to establish claims of intentional infliction of emotional distress, negligent infliction of emotional distress, or a state constitutional violation. Accordingly, Defendants ask that Plaintiff's claims be dismissed in their entirety, and that the Court fully grant this Motion for Summary Judgment with prejudice.

## II. STATEMENT OF RELEVANT FACTS

### A. Coach Schooler Recruits Ms. Scott to Play For Evergreen

After becoming the Evergreen Head Coach in 2014, Coach Schooler recruited Ms. Scott to play for her after hearing from a coaching acquaintance that Ms. Scott was a troubled, but talented player.[1] After considering Coach Schooler's offer, Ms. Scott declined, but later to enrolled at Evergreen anyway, on her own. During the early part of the 2014 school year, Ms. Scott and her significant other ran into Coach Schooler on campus, and Ms. Scott introduced Coach Schooler to her wife, Lorraine Stone.[2] Soon thereafter, Coach Schooler and Ms. Scott agreed that she would be a practice player with the team while she went through the process to gain her eligibility to play in official games.

---

[1] Exhibit E (to Declaration of El Shon Richmond) Memo re Investigation at p.7.
[2] Schooler Dep. at 159:14-25.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
-- NO. 3:17-cv-05823-BHS

2

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

## B.    Ms. Scott's Relationship With Coach Schooler Starts Well, Then Sours

When Ms. Scott first joined the team, she and Coach Schooler got along well.[3] Although Ms. Scott was under some significant financial stress. Coach Schooler helped her locate a work-study position and supplied Ms. Scott with food and clothing when she was having difficulty obtaining those things on her own.[4]

Nevertheless, once the basketball season actually started, Ms. Scott felt that Coach Schooler's approach to her changed, as she perceived the coach to have become less interested in her as an ineligible redshirt and became more intense and focused on the teammates who actually played in the games.[5] Over time, the coaching staff perceived Ms. Scott to be less enthusiastic and engaged than when she first joined the team, and observed that she had to constantly be encouraged to exhibit a good attitude, good body language, and to give great effort consistently in practice. She also neglected to take the steps necessary to gain her eligibility from the NAIA Clearinghouse, despite receiving reminders from Coach Schooler.[6]

After meeting with Ms. Scott regarding her commitment to remaining with the team and asking her to write a letter regarding her desire to continue with the team and meet the expectations of the team and coaching staff, Coach Schooler met with Scott the following week and was disappointed with her failure to display a real passion for remaining with the team. Based on Ms. Scott's apparent lack of enthusiasm for remaining with the team and her continuing ineligibility, Coach Schooler informed Ms. Scott in May 2015 that the team was going to go in a different direction, most significantly because of Ms. Scott's failure to gain her eligibility from the NAIA.[7]

---

[3] Richmond Decl.; Ex. A (Scott Dep., Vol. I., 96- 99, 101, 117:19-24).
[4] Richmond Decl.; Ex. A (Scott Dep., Vol. I., 96- 99).
[5] *Id.*at 121-122.
[6] Schooler Dep. 230-31.
[7] *Id.*

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
-- NO.  3:17-cv-05823-BHS

3

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

**C.** **Plaintiffs' Complaints of Mistreatment Lead To An Investigation; Evergreen And Coach Schooler Addressed The Concerns And Coach Schooler Later Left Evergreen**

On February 11, 2016, Evergreen's Affirmative Action and Equal Opportunity Officer, Lorie Mastin, received a complaint from Ms. Scott that Coach Schooler had engaged in verbal abuse while Ms. Scott was a member of the women's basketball team. Specifically, Ms. Scott stated that Coach Schooler yelled and used profanity in an inappropriate way, and made racially offensive and derogatory comments in front of the team to Ms. Scott and other members of the team, which was majority African-American. It is important to note that no additional allegedly race-related comments were made after Ms. Scott's complaint.

Ms. Scott also complained that Ms. Schooler made comments about Ms. Scott's same-sex relationship, allegedly referring skeptically to Ms. Scott's wife in front of the team. Ms. Scott also complained that Ms. Schooler allegedly criticized her on at least one occasion for wearing a t-shirt to practice that referenced a Portland Gay Pride event. Ms. Scott also reported that Coach Schooler made references to being unwilling to coach a ghetto basketball team or ghetto hoop stars.

When Ms. Mastin investigated Ms. Scott's complaints, Coach Schooler acknowledged stating during halftime of a game in which players were yelling and talking disrespectfully to each other, the referees, and the coaching staff, and were playing in a manner that was not consistent with the way that they were coached to play, she said that she would not coach a team that played "ghetto ball." She also acknowledged yelling and using profanity at times, but denied that she intended to say anything that was racially offensive, recalling that her African-American predecessor had used the term without anyone taking any offense.[8] Coach Schooler also denied being critical of Ms. Scott's relationship with Ms. Stone.

---

[8] Schooler Dep. at 192:21-193:23; Scott Dep. (Vol.1) at 218:20-22.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
-- NO. 3:17-cv-05823-BHS

4

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1    Ms. Mastin concluded Ms. Schooler had violated Evergreen's non-discrimination policy[9]

2    based on race by using the term "ghetto ball" regardless of her intention to describe an

3    unstructured form of play, rather than as a racial comment. Because the purpose of Ms. Mastin's

4    investigation was not to determine Ms. Schooler's intent, Ms. Mastin concluded Ms. Schooler's

5    admission she had used the term, without more, violated the policy because Ms. Scott and

6    Ms. Weatherspoon reported they had perceived the comment as discriminatory.

7         Nevertheless, Ms. Mastin concluded Ms. Schooler had <u>not</u> violated Evergreen's non-

8    discrimination policy based on sexual orientation, as "conflicting views" of the "incidents"

9    alleged by Ms. Scott made it impossible to determine whether Ms. Schooler had violated the

10   policy. Specifically, the comments had occurred during a joking conversation between Ms. Scott

11   and her teammates, so Ms. Mastin was unable to determine whether Ms. Schooler commented

12   directly.

13        Finally, Ms. Mastin concluded that Ms. Schooler had engaged in discriminatory

14   harassment contrary to Evergreen's policy when she admitted to being angry, using profanity

15   and yelling at her players while using language like "ghetto ball."

16        On April 16, 2016, a second team member, Linda Wilson, filed a formal complaint of

17   discrimination based on sexual orientation because Ms. Schooler authorized and enforced a team

18   standard that prohibited intra-team dating relationships. Ms. Wilson alleged that she experienced

19   significant anxiety because Ms. Schooler not only discouraged intra-team dating but required

20   players to hold teammates accountable for adherence to the policy.

21        Coach Schooler explained to Ms. Mastin that she had no problem with the sexual

22   orientation of her players as she herself personally identifies as lesbian. She admitted to

23   suggesting and supporting an informal policy of discouraging intra-team dating because of

24   serious problems that had occurred on the team in prior years. Ms. Schooler did not intend the

25

26   ───────────────
     [9] Notably, Evergreen's anti-discrimination policy is more expansive than the statutes under which
     Plaintiffs' claims are asserted in this case.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
-- NO.  3:17-cv-05823-BHS

5

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

policy to affect same-sex players differently than their heterosexual teammates. It was a standard set by the team and not intended to be a formal policy.

Coach Schooler acknowledged that she encouraged Ms. Wilson to speak to her teammates about their intra-team dating relationship when Ms. Wilson initiated a conversation about it. Coach Schooler states that *Ms. Wilson* complained about the effect that her teammates' dating was having on the team, and Coach Schooler told Ms. Wilson to talk to those teammates directly if she believed their relationship was causing a problem for the team.

Ms. Mastin concluded, "whether by way of a perceived rule or policy from Coach Schooler or a team standard sanctioned by Coach Schooler, intra-team dating relationships were prohibited during the 2015-2016 season." Ms. Mastin determined "[t]he effect of the prohibition and its enforcement singled-out and treated same-sex, intra-team dating relationships differently, as compared to other types of relationships that could potentially create pitfalls for the team." Ms. Mastin found Ms. Schooler "discriminated against students on the basis of sexual orientation" contrary to school policy.

On September 13, 2016, Ms. Schooler received a Letter of Reprimand based on Ms. Scott's complaint and Ms. Mastin's investigation findings[10]. After Ms. Mastin completed her investigation into Ms. Wilson's complaint, Coach Schooler decided to resign her position at Evergreen, effective January 1, 2017.[11]

**D.    Procedural History**

Nevertheless, on October 16, 2017, Ms. Scott and Ms. Wilson filed this lawsuit against Evergreen and Ms. Schooler in this Court, asserting claims of unlawful racial harassment under Title VI, unlawful sexual orientation harassment under Title IX, discrimination pursuant to the Washington State Constitution, and both intentional and negligent infliction of emotional distress.

---

[10] Deposition of Jennifer Schooler at 105 ("Schooler Dep." herein) attached to Declaration of El Shon Richmond as **Exhibit C**.
[11] Schooler Dep. at 106:5-22.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
-- NO.  3:17-cv-05823-BHS

6

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

On November 28, 2018, Defendants filed a motion to dismiss Plaintiff Wilson and her claims due to her failure to prosecute her case or to submit to a deposition. The present motion requests the dismissal of any and all remaining claims.

### III.    LEGAL AUTHORITY

#### A.    Summary Judgment Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court.[12] The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[13] "A properly supported summary judgment motion cannot be defeated by relying upon conclusory allegations, improbable inferences, acrimonious invective, or rank speculation."[14]

A defendant may move for summary judgment by simply pointing out to the trial court that the plaintiff lacks sufficient evidence to support the essential elements of his or her claim, or by providing declarations demonstrating the absence of a genuine issue of material fact.[15] Here, Defendants use both techniques in support of this summary judgment. Regardless of whether the moving party shows no issue of fact or points out an absence of evidence in the plaintiff's case, the plaintiff may not rest on allegations or speculation in its pleadings, but must set forth specific facts showing that there is a reason for a trial.[16] To overcome a motion for

---

[12] *Brauss v. U.P.S.*, CV-09-356-LRS, \*1, 2011 WL 204871 (E.D. Wash. Jan. 21, 2011) (citing *Zweig v. Hearst Corp.,* 521 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1025 (1975)). *See also Schacht v. Wisconsin Dep't of Corr.,* 175 F.3d 497, 504 (7th Cir. 1999) (Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events).

[13] Fed. R. Civ. P. 56.

[14] *Lewis v. Whitman-Hanson Reg'l Sch. Dist.*, 843 F. Supp. 2d 182, 191 (D. Mass. 2012). *See also Pineda v. City of Seattle*, C06-05157RSL, \*5, 2006 WL 3386865 (W.D. Wash. Nov. 20, 2006) (citing *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 518 (9th Cir. 1993)) ("[C]onclusory allegations of discrimination are insufficient to defeat a motion for summary judgment.").

[15] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Brame v. St. Regis Paper Co.,* 97 Wash.2d 748, 649 P.2d 836 (1982);

[16] *Id.*; *Diamond Parking, Inc. v. Frontier Bldg. Ltd. Partnership*, 72 Wash. App. 314, 319, 864 P.2d 954 (1993), *review denied*, 124 Wash.2d 1028 (1994).

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
-- NO.  3:17-cv-05823-BHS

7

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

summary judgment, a plaintiff in a discrimination case must establish specific, material facts to support each element of *a prima facie* case.[17]

**B.      Plaintiff Linda Wilson Cannot State A Viable Claim On The Facts Of This Case.**

Plaintiff Wilson's clams in this case do not appear to support any cause of action asserted in this lawsuit.  Initially, Defendants have filed a separate motion to dismiss Ms. Wilson for failing to prosecute her case and failing to submit to Defendants' request to depose her months ago.  Defendants incorporate by reference their motion to dismiss Ms. Wilson and all of her claims in this lawsuit.

Additionally, Mrs. Wilson appears to assert claims based on Ms. Schooler's alleged request that she hold her teammates accountable for engaging in relationships that could be disruptive to the team's cohesion.  It is unclear which, if any, of the claims asserted in this lawsuit are legally supportable on these allegations.  Hence, Ms. Wilson appears to assert no legally viable claims in this action, and to the extent that she attempts to do so, her claims should be dismissed.

**C.      Plaintiffs Cannot Establish Claims of Race or Gender Harassment Under Title VI or Title IX.**

Title IX provides in pertinent part: "No person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."[18]  Title IX was enacted in 1972 and was modeled after Title VI of the Civil Rights Act of 1964, which is parallel to Title IX except that it prohibits race discrimination, not sex discrimination, and applies in all programs receiving federal funds, not only in education programs.[19]  The two statutes operate in the same manner, conditioning an offer of federal funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and the recipient

---

[17] *Davis v. West One Automotive Group*, 140 Wash. App. 449, 166 P.3d 807 (2007).
[18] 20 U.S.C. § 1681(a).
[19] *See* 42 U.S.C. § 2000d et seq.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
-- NO.  3:17-cv-05823-BHS

8

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

of funds.[20] Title VI and Title IX are so similar that a decision interpreting one generally applies to the other.[21] In light of the generally identical interpretation by courts of both Title VI (racial equality) and Title IX (gender equality) claims, Defendants analysis will apply equally to both Plaintiff's Title VI claims and Title IX claims.

The Gebser Court held: "that damages may not be recovered [where there is harassment alleged against a teacher] unless an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct."[22] The Supreme Court explained that a school district's liability for teacher-on-student sexual harassment is not based on respondeat superior or vicarious liability, but rather is based on the district's own intentional conduct in remaining idle after receiving actual notice of sexual harassment.[23] Later in the opinion, the Gebser Court further ruled that a damages claim will not lie under Title IX unless "an official who at a minimum has authority to address the alleged discrimination and to initiate corrective measures on the recipient's behalf has actual knowledge of discrimination . . . and fails adequately to respond."[24]

**1.    Defendant Schooler is Not Subject To Liability under Title VI or Title IX.**

Ms. Scott has alleged claims of discriminatory harassment against Individual Defendant Schooler. But, as a matter of law, a plaintiff can only properly assert claims raised under Title VI or Title IX against entities or organizations that receive federal funding, not individual defendants.[25] Accordingly, Plaintiff's discrimination claims asserted against Ms. Schooler are not actionable and should be dismissed.

---

[20] *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998).
[21] *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 257-59, (2009).
[22] *Id*. at 277.
[23] *Id.* at 285; *Davis v. Monroe County Board of Education*, 526 U.S. 629, 641-42 (1999).
[24] *Gebser*, 524 U.S. at 290.
[25] *Wood v. Yordy*, 753 F.3d 899, 903, 904 (9th Cir. 2014); *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 257*Davis*, 526 U.S. at 641; 20 USC § 1682 (Title IX); 42 USC 2000d (Title VI).

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
-- NO.  3:17-cv-05823-BHS

9

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

## 2. Title IX and Sexual Orientation discrimination.

Most Courts that have considered the issue and the United States Department of Education's Office for Civil Rights appear to agree that Title IX does not generally apply to claims of harassment based solely on sexual orientation.[26] Accordingly, because Title IX clearly proscribes gender, rather than sexual orientation discrimination, Plaintiffs' Title IX claims are also properly dismissed on this ground.

## 3. Plaintiff's Cannot Show That Evergreen Was "Deliberately Indifferent" To Plaintiffs' Alleged Discriminatory Harassment.

Initially, Plaintiffs' discrimination claims fail because they are unable to meet a key threshold requirement for their Title VI and Title IX claims: that the school's response to the alleged discrimination was deliberately indifferent. Damages under Title IX [and Title VI] are available only if an official with authority to address the alleged discrimination and institute corrective measures has actual knowledge of the discrimination and fails to adequately respond – meaning that the official acts with deliberate indifference.[27]

The test for deliberate indifference is "whether a reasonable fact-finder could conclude that the [school]'s response was clearly unreasonable in light of the known circumstances."[28] To meet this high standard there must essentially be an official decision not to remedy the violation, and this decision must be clearly unreasonable.[29] This standard is intended to provide the necessary deference and latitude to schools to investigate and respond without worrying about

---

[26] *U.S. Dep't of Educ., Office for Civil Rights*, Dear Colleague Letter, Oct. 26, 2010 ("Title IX does not prohibit discrimination based solely on sexual orientation"); *Montgomery v. Indep. Sch. Dist. No. 709*, 109 F. Supp. 2d 1081 (D. Minn. 2000) ("Title IX prohibits only discrimination based on sex and does not extend to any other form of invidious discrimination…. The Court concludes that, to the extent that plaintiff asserts Title IX claims based on discrimination due to his sexual orientation or perceived sexual orientation, these are not actionable and must be dismissed."); *But see* Videckis v. Pepperdine University, 150 F.Supp. 3d 1151 (C.D. CA 2015).

[27] *Gebser*, 524 U.S. at 290.

[28] *Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1089 (9th Cir.2006) (internal quotation marks and citation omitted).

[29] *Davis*, 526 U.S. at 649.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
-- NO. 3:17-cv-05823-BHS

10

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1  liability."[30]  Courts "should refrain from second-guessing the disciplinary decisions made by

2  school administrators.[31]

3      In this case, there is no doubt that Evergreen's response was the very antithesis of

4  deliberate indifference. In this case, Ms. Mastin promptly initiated an investigation after Plaintiff

5  complained to her on February 1, 2016. There were no further alleged incidents after this report.

6  Evergreen's initial response included an investigation that led to Ms. Schooler's letter of

7  reprimand and a performance plan.  Mastin's second investigation concluded, and Ms. Schooler

8  later resigned.  In fact, even Ms. Scott acknowledges that she was satisfied with the investigation

9  of her complaint and its result.[32]  This is the type of response contemplated by the laws that

10  prohibit unlawful, discriminatory harassment.  Consequently, no liability can be imputed to the

11  Defendants, and any harassment claim against them must fail.  Consequently, Plaintiffs' Title

12  VI and Title IX claims are properly dismissed as a matter of law.[33]

13  **D.  The Same Actor Inference Bars Ms. Robinson's Discrimination Claims**

14      Initially, Plaintiff's discrimination claims fail as a matter of law because of the same-

15  actor inference. When the same person who previously took a positive action towards a plaintiff

16  later takes a negative action towards that same plaintiff, to survive dismissal the plaintiff's

17  evidence must answer an obvious question: if the employer or alleged bad actor is opposed to

18  persons with a certain attribute, why would the employer have hired such a person in the first

19  place?[34]

20      This "same actor inference" does not require that the final decision-maker be identical for

21  the positive and negative employment actions, but rather only requires that an individual be

22

23      [30] *Davis*, 526 U.S. at 648-49 (emphasis added).

24      [31] *Id*. At 648.
    [32] Scott dep. (Vol. 1) at 156:1-5.

25      [33] *Sandoval*, 532 U.S. at 279-281; Davis, 526 U.S. at 648; *Gebser*, 524 U.S. at 277.

    [34] *See Hill v. BCTI Income Fund-I*, 144 Wash. 2d 172, 189-90, 23 P.3d 440 (2001); *see also Griffith v.*
26  *Schnitzer Steel Indus., Inc.*, 128 Wash. App. 438, 454-55, 115 P.3d 1065 (2005); *Coghlan v. Am. Seafoods Co. LLC*
413 F.3d 1090, 1096-97 (9th Cir. 2005) (applying Washington law).

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
-- NO.  3:17-cv-05823-BHS

11

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

involved in both the positive and negative actions.[35] "When someone is both hired and fired by the same decision makers within a relatively short period of time, there is a strong inference that he or she was *not* discharged because of any attribute the decision makers were aware of at the time of hiring."[36] When this inference applies, plaintiffs are "rarely" able to muster the "extraordinarily strong showing of discrimination" to overcome it.[37] Recognizing this inference supports the purpose of anti-discrimination laws: to provide equal opportunities for people regardless of race or gender.

Here, Coach Schooler originally recruited Ms. Scott and made the decision to offer Ms. Scott an opportunity to work out with the team that Scott accepted even after she originally declined Schooler's pre-semester invitation. Ms. Schooler was aware of Ms. Scott's race and sexual orientation before she invited Scott to work with the team after seeing that Scott had enrolled at Evergreen on her own. Coach Scott also provided help to Ms. Scott when she perceived a need on Scott's part, and even Scott acknowledges that before the basketball season began, she had a very positive relationship with Coach Schooler.[38]

The "same actor inference" should apply to the Defendants in this case, as Ms. Scott cannot explain why the Defendants would have taken these positive actions if they harbored discriminatory animus against her, nor can she muster the "extraordinarily strong showing of discrimination" required to overcome the same actor inference. Accordingly, the Court should dismiss Ms. Scott's discrimination claims with prejudice.

---

[35] *Griffith*, 128 Wash. App. at 454 (regarding the same actor inference, "all that is required is that one of the decisionmakers involved in the promoting and firing be the same"); *see also Ramos v. Marriott Int'l, Inc.*, 134 F. Supp. 2d 328, 346 (S.D.N.Y. 2001) ("Lanchais, Executive Chef of the Hotel, had the *final determination* as to whether plaintiff should be hired as Banquet Sous Chef . . . . It is undisputed that he made the ultimate decision that led to plaintiff's termination. Because Lanchais was substantially involved in hiring and firing her one year later, there is a strong inference that his decision to fire plaintiff was not made with any discriminatory animus." (emphasis added)). Where they are not inconsistent with Washington law, federal authorities are the persuasive authority in interpreting Washington employment discrimination law. *Hill*, 144 Wash.2d at 180.

[36] *Hill*, 144 Wash.2d 172 at 189.

[37] *Coughlan*, 413 F.3d at 1097.

[38] Scott Dep., Vol. I., 95:22-25; 96:7-20

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
-- NO. 3:17-cv-05823-BHS

12

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

**E.   Plaintiff Cannot Establish A Claim Of Intentional Infliction Of Emotional Distress**

Plaintiff asserts a claim of intentional infliction of emotional distress against one or more Defendants in this case.  As a matter of law, Plaintiff cannot show that the conduct in this case comes close to meeting the very high standard of outrageous, atrocious, or utterly intolerable behavior required to establish an IIED claim.

To prevail on a claim for outrage, a Plaintiff must prove three elements: (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) severe emotional distress on the part of the Plaintiff.[39]  Outrage cannot stem from "mere insults, indignities, [or] threats."[40]  **Causing embarrassment or humiliation will not support imposition of liability on a claim of outrage**.[41]  Washington courts expect plaintiffs to "be hardened to a certain degree of rough language, unkindness and lack of consideration."[42]

Notably, the first element of an outrage claim requires proof that the conduct was "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"[43]  It is initially for the Court to determine whether reasonable minds could differ as to whether or not outrage had been committed.[44]

In making the initial determination as to whether the conduct complained of was sufficiently extreme to result in liability, the court considers the following:

(a) the position occupied by the defendant;

(b) whether plaintiff was peculiarly susceptible to emotional distress, and if defendant knew this fact;

(c) whether defendant's conduct may have been privileged under the circumstances;

---

[39] *Robel v. Roundup Corp.*, 148 Wash.2d 35, 51, 59 P.3d 611, 619–21 (2002); *Jones v. Rabanco, Ltd.,* 439 F. Supp. 2d 1149, 1169–70 (W.D. Wash. 2006).

[40] *Kloepfel v. Bokor,* 149 Wash.2d 192, 195, 66 P.3d 630 (2003).

[41] *Dicomes v. State,* 113 Wash.2d 612, 630, 782 P.2d 1002 (1989).

[42] *Id.; Jones*, 439 F. Supp. 2d at 1169.

[43] *Dicomes,* 113 Wash.2d at 630 (quoting *Grimsby*, 85 Wash.2d at 59); *Jones*, 439 F. Supp. 2d at 1169.

[44] *Robel*, 148 Wash.2d at 51; *Jones*, 439 F. Supp. 2d at 1169.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
-- NO.  3:17-cv-05823-BHS

13

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

(d) the degree of emotional distress caused by a party must be severe as opposed to constituting mere annoyance, inconvenience or the embarrassment which normally occur in a confrontation of the parties; and

(e) the actor must be aware that there is a high probability that his or her conduct will cause severe emotional distress and the actor must proceed in a conscious disregard of it.[45]

In this case, Plaintiffs are unable to establish any of the elements or requirements of their outrage claim and cannot prove that the Defendants engaged in any extreme or outrageous conduct towards them or acted intentionally or recklessly to inflict emotional distress on any plaintiff. This is particularly true in the context of a coach / player relationship that commonly and understandably involve interactions that are not always enjoyable for either the player or the coach.

Moreover, Plaintiffs' outrage claims are also redundant and duplicative of their discrimination claims. The dismissal of an outrage claim is appropriate when plaintiff also asserts a discrimination claim from which emotional distress damages are recoverable.[46] Accordingly, Court should therefore dismiss Plaintiff's outrage claim with prejudice.

**G.      Plaintiff cannot establish a claim of Negligent Infliction of Emotional Distress.**

To prove negligent infliction of emotional distress ("NIED") in a supervisory setting, Plaintiffs must typically prove that:

(1) the defendant's negligent acts injured plaintiff;

(2) the acts were not a workplace-type dispute or subordinate discipline; and

(3) the dominant feature of the negligence claim was the emotional injury.[47]

A plaintiff may recover damages for NIED in an employment-type context only if the factual basis for the NIED claim is separate and distinct from the factual basis for the

---

[45] *Birklid v. Boeing,* 127 Wash.2d 853, 867, 904 P.2d 278 (1995); *Jones*, 439 F. Supp. 2d at 1169-70.

[46] *Anaya v. Graham*, 89 Wn. App. 588, 595, 950 P.2d 16 (1998).

[47] *See Snyder v. Med. Serv. Corp. of E. Wash.*, 98 Wn. App. 315, 323, 988 P.2d 1023 (1999) (citing *Chea v. Men's Wearhouse, Inc.*, 85 Wn. App. 405, 412-13, 932 P.2d 1261 (1997) review denied, 134 Wn.2d 1002 (1998)).

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
 -- NO.  3:17-cv-05823-BHS

14

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

discrimination claim.[48]  Where, as here, the Plaintiff's claim for emotional distress arises directly from allegedly discriminatory conduct, the claim is duplicative and is properly dismissed by the superior court.[49]  Additionally, Washington courts will not recognize a NIED claim that arises from a workplace-style dispute, a disciplinary matter, or when the only factual basis for the distress is a discrimination claim.[50]  In *Snyder v. Medical Service Corp. of Eastern Wash*., 98 Wash. App. 315, 988 P.2d 1023 ( 1999), the Court held that rude, boorish, threatening, and mean-spirited conduct and actions that occur in the workplace in connection with work-related topics, cannot sustain an NIED claim.[51]

Furthermore, recovery under the tort of negligent infliction of emotional distress is limited to Plaintiffs who are ***actually placed in peril*** by Defendant's negligent conduct.[52]  In deciding whether a duty is owed the primary consideration is whether the conduct in question is unreasonably dangerous.[53]  Unless the defendant's conduct is unreasonably dangerous, the defendant owes no duty.[54]  "Conduct is unreasonably dangerous when the risks of harm outweigh the utility of the activity."[55]

In the present case, Plaintiffs are unable to establish a prima facie case of NIED based on the facts of their case that involve their dissatisfaction with comments and verbal interactions with their basketball coach.  Plaintiffs are also unable to present facts showing that they were placed in peril by the conduct of any Defendant, as there is no allegation, nor evidence, that any Plaintiff was placed in peril or serious, unreasonable danger as a result of their coach's alleged comments and criticisms.  Moreover, their NIED claims are based on the same facts as their

---

[48] *See Haubry v. Snow*, 106 Wn. App. 666, 678, 31 P.3d 1186, 1193 (2001).
[49] *Id.*; *Francom v. Costco Wholesale Corp.*, 98 Wash. App. 845, 865, 991 P.2d 1182, 1192 *review denied*, 141 Wash.2d 1017, 10 P.3d 1071 (2000).
[50] *Robel*, 103 Wash. App. at 91, 10 P.3d at 1113.
[51] *Id*. at 315.
[52] *Waller v. State*, 64 Wash. App. 318, 337, 824 P.2d 1225, *review denied,* 119 Wash.2d 1014, 833 P.2d 1390 (1992).
[53] *Keates v. City of Vancouver*, 73 Wn.App. 257, 266 (citing *Corrigal v. Ball & Dodd Funeral Home, Inc.*, 89 Wn.2d 959, 962, 577 P.2d 580 (1978)).
[54] *Hunsley v. Giard*, 87 Wn.2d 424, 435-36 (1976).
[55] *Keates*, 73 Wn.App. at 266 (citing *Wells v. Vancouver*, 77 Wn.2d 800, 810 n. 3, 467 P.2d 292 (1970)).

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
-- NO.  3:17-cv-05823-BHS

15

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1    discrimination claims, and emanate from workplace-style personality disputes, conflicts, and

2    issues. For these reasons, Plaintiffs' NIED claims should be dismissed.

3    **H.**     **There is no actionable State Constitutional claim.**

4        Plaintiffs allege that Defendants have violated their rights under the Washington State

5    constitutions. Plaintiffs' efforts to assert such claims must fail because Washington state does

6    not have a civil rights act analogous to 42 U.S.C. § 1983 and alleged violations of the state

7    constitution are not independently actionable torts.[56]

8                     **IV.**    **CONCLUSION**

9        Based on the foregoing arguments and authorities, Defendants respectfully ask the Court

10   to grant summary judgment as to all of Plaintiffs' claims.

11        DATED this 29th day of November 2018.

12                              ROBERT W. FERGUSON
                                 Attorney General

13

14

15                            */s/ El Shon Richmond*
                                 EL SHON D. RICHMOND, WSBA No. 26813
                                 Assistant Attorney General

16                                  Attorney for Defendants

17

18

19

20

21

22

23

24

25

26      [56] *See Reid v. Pierce County*, 136 Wash.2d 195, 961 P.2d 333 (1998); *Waller v. State*, 64 Wash. App. 318, 336 (1992); *Spurrell v. Block*, 40 Wash. App. 854, 860-62, 701 P.2d 529, *review denied*, 104 Wash.2d 1014 (1985); *Systems Amusement, Inc. v. State*, 7 Wash. App. 516, 518-19, 500 P.2d 1253 (1972).

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
-- NO. 3:17-cv-05823-BHS
                16
                ATTORNEY GENERAL OF WASHINGTON
                Torts Division
                7141 Cleanwater Drive SW
                PO Box 40126
                Olympia, WA 98504-0126
                (360) 586-6300

**PROOF OF SERVICE**

I certify that I served a true and correct copy of this document on all parties or their

counsel of record on the date below as follows:

| | |
|---|---|
| ADA K. WONG<br>AKW LAW PC<br>6100 219TH ST SW STE 480<br>MOUNTLAKE TERRACE WA 98043 | ☐ U.S. Mail via state Consolidated Mail Service (with proper postage affixed)<br>☐ Courtesy copy via facsimile:<br>☒ Via CM/ECF system:<br>ada@akw-law.com<br>kaytlin@akw-law.com<br>paralegal@akw-law.com<br>assistant@akw-law.com<br>☐ ABC/Legal Messenger |
| LINDA A. WILSON<br>2504 17TH AVE NW<br>OLYMPIA WA 98502 | ☒ U.S. Mail via state Consolidated Mail Service (with proper postage affixed)<br>☒ Courtesy copy via Certified Mail<br>☐ Via CM/ECF system:<br>☐ ABC/Legal Messenger |

I declare under penalty of perjury under the laws of the state of Washington that the

foregoing is true and correct.

DATED this 29th day of November 2018, at Olympia, Washington.


*/s/ El Shon D. Richmond*_____
EL SHON D. RICHMOND
Assistant Attorney General

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
-- NO. 3:17-cv-05823-BHS

17

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300